**Slip Op. 21-6**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Before:  **Timothy C. Stanceu, Chief Judge**
**Jennifer Choe-Groves, Judge**
**M. Miller Baker, Judge**

| | |
|---|---|
| **PRIMESOURCE BUILDING PRODUCTS, INC.,**<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>**UNITED STATES, et al.,**<br>　　　　Defendants. | **Court No. 20-00032** |
| **OMAN FASTENERS, LLC,**<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>**UNITED STATES, et al.,**<br>　　　　Defendants. | **Consol. Court No. 20-00037** |
| **ASTROTECH STEELS PRIVATE LTD.,**<br>　　　　Plaintiff,<br><br>　　　v.<br><br>**UNITED STATES, et al.,**<br>　　　　Defendants. | **Court No. 20-00046** |

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                               **Page 2**

| | |
|---|---|
| **TRINITY STEEL PRIVATE LTD.,**<br>Plaintiff,<br><br>v.<br><br>**UNITED STATES, et al.,**<br>Defendants. | **Court No. 20-00047** |
| **NEW SUPPLIES CO., INC., et al.,**<br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES, et al.,**<br>Defendants. | **Court No. 20-00048** |
| **ASLANBAS NAIL AND WIRE CO.,**<br>**et al.,**<br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES, et al.,**<br>Defendants. | **Court No. 20-00049** |
| **J. CONRAD LTD,**<br>Plaintiff,<br><br>v.<br><br>**UNITED STATES, et al.,**<br>Defendants. | **Court No. 20-00052** |

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                    **Page 3**

| | |
|---|---|
| **METROPOLITAN STAPLE CORPORATION,**<br><br>                    Plaintiff,<br><br><br>              v.<br><br><br>**UNITED STATES, et al.,**<br>                    Defendants. | **Court No. 20-00053** |
| **SOUTHERNCARLSON, INC., et al.,**<br><br>                    Plaintiffs,<br><br><br>              v.<br><br><br>**UNITED STATES, et al.,**<br>                    Defendants. | **Court No. 20-00056** |
| **TEMPO GLOBAL RESOURCES, LLC,**<br><br>                    Plaintiff,<br><br><br>              v.<br><br><br>**UNITED STATES, et al.,**<br>                    Defendants. | **Court No. 20-00066** |
| **FARRIER PRODUCT DISTRIBUTION, INC.,**<br><br>                    Plaintiff,<br><br><br>              v.<br><br><br>**UNITED STATES, et al.,**<br>                    Defendants. | **Court No. 20-00098** |

Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,
Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,
Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,
Court No. 20-00098, and Court No. 20-00118.                              **Page 4**

| |
|---|
| **GEEKAY WIRES, LTD.,**<br>          Plaintiff,<br><br>          v.<br><br>**UNITED STATES, et al.,**<br>          Defendants. |

**Court No. 20-00118**

## OPINION AND ORDER

[The American Steel Nail Coalition's motions to intervene in twelve pending actions are denied, both as to the Coalition itself and as to its member companies.  Judge Baker concurs in a separate opinion.]

Dated: January 20, 2021

*Adam H. Gordon*, *Jennifer M. Smith*, *Lauren N. Fraid*, and *Ping Gong*, The Bristol Law Group PLLC of Washington, D.C., for Proposed Defendant-Intervenor.

*Jeffrey S. Grimson*, *Kristin H. Mowry*, *Jill A. Cramer*, *Sarah M. Wyss*, *James C. Beaty*, and *Bryan P. Cenko*, Mowry & Grimson, PLLC of Washington, D.C., for PrimeSource Building Products, Inc.

*Michael P. House*, *Jon B. Jacobs*, *Andrew Caridas*, and *Shuaiqi Yuan*, Perkins Coie LLP of Washington, D.C., for Oman Fasteners, LLC; Huttig Building Products, Inc.; and Huttig, Inc.

*Max F. Schutzman*, *Ned H. Marshak*, and *Jordan C. Kahn*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP of New York, NY, and Washington, D.C., for Astrotech Steels Private Ltd. and Trinity Steel Private Ltd.

*Brenda A. Jacobs*, Jacobs Global Trade & Compliance LLC of McLean, VA, for New Supplies Co., Inc. and GJ Burkhart Inc. dba Fry Fastening Systems.

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                    **Page 5**

*Lizbeth R. Levinson*, *Ronald M. Wisla*, and *Brittney R. Powell*, Fox Rothschild LLP of Washington, D.C. for Aslanbas Nail and Wire Co.; Geekay Wires, Ltd.; SouthernCarlson, Inc.; Building Material Distributors, Inc.; Continental Materials, Inc.; Wexcell, LLC; Fanaco Fasteners LLC; S.T.O Industries, Inc.; PT Global, Inc.; Building Products of America, LLC; Kratos Building Products, Inc.; and DC International, Inc.

*Jeffrey S. Neely* and *Nithya Nagarajan*, Husch Blackwell LLP of Washington, D.C. for J. Conrad LTD and Metropolitan Staple Corp.

*Richard A. Mojica*, *Adam P. Feinberg*, *Marcus A.R. Childress*, Miller & Chevalier Chartered of Washington, D.C., for Tempo Global Resources, LLC.

*David G. Forgue*, Barnes, Richardson & Colburn, LLP of Chicago, IL for Farrier Product Distribution, Inc.

*Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants.  With her on the brief were *Tara K. Hogan*, Assistant Director and *Stephen C. Tosini,* Senior Trial Counsel.

Before the court are motions submitted by the American Steel Nail Coalition (the "Coalition") to intervene as a party defendant in each of these twelve actions, in which plaintiffs challenge the legality of a presidential proclamation ("Proclamation 9980" or the "Proclamation") that imposed 25% duties on imports of certain articles made of steel, including steel nails.  Six plaintiffs oppose the Coalition's motions to intervene, while others consented, deferred to the discretion of the Court, or did not respond to the Coalition's motions.  Ruling that the individual members of the Coalition fail to qualify for intervention as of right or for permissive intervention, the court denies these motions, both as to the Coalition and as to its member companies.

## I. BACKGROUND

Proclamation 9980, issued by President Trump on January 24, 2020 with an

effective date of February 8, 2020, imposed duties of 25% *ad valorem* on imports of what

it identified as "derivatives" of aluminum articles and of steel articles, including steel

nails. *See Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles*

*Into the United States*, 85 Fed. Reg. 5,281 (Exec. Office of the President Jan. 29, 2020)

("*Proclamation 9980*"). As authority for this action, the Proclamation cited section 232 of

the Trade Expansion Act of 1962, as amended ("Section 232"), under which the

President, upon a report of the Secretary of Commerce and subject to certain procedures

and conditions, may adjust the imports of an article that is "being imported into the

United States in such quantities or under such circumstances as to threaten to impair

the national security." 19 U.S.C. § 1862(c).

The plaintiffs in these twelve actions, which were brought during the period of

February 4 to June 4, 2020, variously challenge the issuance of the Proclamation on

multiple grounds, including that the President did not comply with statutory

procedures and thereby exceeded his delegated authority, that the Secretary of

Commerce, in taking actions under Section 232, failed to comply with requirements of

the Administrative Procedure Act, 5 U.S.C. § 551 et. seq., that Section 232 is an

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                 **Page 7**

unconstitutional delegation of legislative authority, that the issuance of the

Proclamation resulted in a denial of due process, and that the issuance of the

Proclamation resulted in a denial of equal protection. *See, e.g.*, Am. Compl. (Ct. No.

20-00032) 19–24 (Feb. 11, 2020), ECF Nos. 21 (conf.) & 22 (pub.); Compl. (Consol. Ct. No.

20-00037) 23–31 (Feb. 7, 2020), ECF No. 2. The Coalition filed motions to intervene as a

party defendant in each of the twelve cases during the period of February 27 to June 15,

2020. *See, e.g.*, Mot. to Intervene as Def.-Intervenor (Ct. No. 20-00032) (Feb. 27, 2020),

ECF No. 47 ("Coalition's Mot.").

The Coalition describes itself as a group of domestic manufacturers of steel

nails.[1] With respect to the twelve pending actions, the Coalition claims an interest in

defending Proclamation 9980 from judicial challenge. The Coalition has filed proposed

answers to the complaints, proposed motions for judgment on the pleadings, and

---

[1] In its motion to intervene in Court No 20-00032, filed on February 27, 2020, the American Steel Nail Coalition (the "Coalition") described itself as having six members: Mid Continent Steel & Wire, Inc.; Kyocera Senco Industrial Tools, Inc.; Tree Island Wire (USA), Inc.; Specialty Nail Company; Legacy Fasteners, LLC; and American Fasteners Co., Ltd. Mot. to Intervene as Def.-Intervenor (Ct. No. 20-00032) 1 n.1 (Feb. 27, 2020), ECF No. 47. As of its Motion to Intervene in *Geekay Wires v. United States*, Court No. 20-00118, the Coalition appears to have expanded to include four more members: Mar-Mac Industries, Inc.; Maze Nails; Pneu Fast Company; and Anvil Acquisition Co., Ltd. *See* Mot. to Intervene as of Right, or, in the Alternative, via Permissive Intervention (Ct. No. 20-00118) 1 n.1 (June 15, 2020), ECF No. 8.

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                **Page 8**

various briefs in the twelve cases.[2]  It also has filed answers to the court's inquiries

relating to its status.  Some plaintiffs have opposed the Coalition's intervention.[3]

## II. DISCUSSION

As it applies here, section 2631(j)(1) of Title 28, United States Code, provides that

"[a]ny person who would be adversely affected or aggrieved by a decision in a civil

action pending in the Court of International Trade may, by leave of court, intervene in

such action," with certain exceptions not here pertinent.  28 U.S.C. § 2631(j)(1).  The

statute further provides that "[i]n those civil actions in which intervention is by leave of

court, the Court of International Trade shall consider whether the intervention will

---

[2] *See, e.g.*, Answer of Proposed Def.-Intervenor Am. Steel Nail Coal. (Ct. No. 20-00032) (Feb. 27, 2020), ECF No. 49; Mot. for J. on the Pleadings, (Ct. No. 20-00032) (Mar. 20, 2020), ECF No. 61; Supp. Br. of Am. Steel Nail Coal. (Ct. No. 20-00032) (Apr. 7, 2020), ECF No. 69.

[3] The plaintiffs opposing the Coalition's intervention are: PrimeSource Building Products, Inc.; Oman Fasteners, LLC; Huttig Building Products, Inc.; Astrotech Steels Private, Ltd.; New Supplies Co., Inc.; and Trinity Steel Private, Ltd.  *See* Resp. in Opp'n to Am. Steel Nail Coal.'s Mot. to Intervene (Ct. No. 20-00032) (Mar. 19, 2020), ECF No. 59; Opp'n to Mot. to Intervene (Consol. Ct. No. 20-00037) (Mar. 18, 2020), ECF No. 55; Pl.'s Opp'n to Am. Steel Nail Coal.'s Mot. to Intervene (Ct. No. 20-00046) (Mar. 17, 2020), ECF No. 28; Pl.'s Opp'n to Am. Steel Nail Coal.'s Mot. To Intervene (Ct. No. 20-00047) (March 17, 2020), ECF No. 24; Pl.'s Opp'n to Am. Steel Nail Coal.'s Mot. to Intervene (Ct. No. 20-00048) (Mar. 20, 2020), ECF No. 23.

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                      **Page 9**

unduly delay or prejudice the adjudication of the rights of the original parties."  *Id.*

§ 2631(j)(2).

The Coalition moves to intervene as of right under USCIT Rule 24(a) and, in the

alternative, moves for permissive intervention under USCIT Rule 24(b).

### A. The Coalition Does Not Meet the Requirements for Intervention As of Right

As pertinent to the pending motions, USCIT Rule 24(a) provides that "the court

must permit anyone to intervene who . . . claims an interest relating to the . . .

transaction that is the subject of the action, and is so situated that disposing of the action

may as a practical matter impair or impede the movant's ability to protect its interest,

unless existing parties adequately represent that interest."  USCIT R. 24(a)(2).

The Coalition claims an economic interest in maintaining the 25% tariffs on

imports of the steel nails subject to Proclamation 9980 on the ground that its members

produce steel nail products in the United States that compete with those imports.  But

neither the Coalition nor any of its individual members have demonstrated that

defendant United States will not adequately represent any interest the Coalition or its

member companies have, or could have, in the tariffs imposed upon the import

transactions that are the subject of the twelve cases for which intervention is sought.

The President imposed the 25% tariffs on the subject steel nails based on the President's

Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,
Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,
Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,
Court No. 20-00098, and Court No. 20-00118.                    Page 10

finding that such action is required so that these imports do not threaten to impair the

national security.  *See Proclamation 9980* ¶ 9, 85 Fed. Reg. at 5,283 ("Based on the

Secretary's assessments, I have concluded that it is necessary and appropriate in light of

our national security interests to adjust the tariffs imposed by previous proclamations

to apply to the derivatives of aluminum articles and steel articles described in Annex I

and Annex II to this proclamation.").  Because the government has but one interest in

this litigation—maintaining Proclamation 9980—it reasonably can be expected to act

vigorously to defend that interest, which Proclamation 9980 has stated to be grounded

in removing a threatened impairment of the national security of the United States.

The Coalition argues that its interests, being private and commercial, are not

coincident with the government's public and enforcement-oriented interests.

Coalition's Mot. 5 (quoting *Vivitar Corp. v. United States*, 7 C.I.T. 165, 168–69, 585 F.

Supp. 1415, 1418–19 (1984)).  The respective motivations may be different, but the

Coalition's overall interest in seeking to intervene is in defending Proclamation 9980

from judicial challenge, and in that critical respect its interest is aligned with that of

defendants.  The Coalition argues that "evidence exists that the interests of the Coalition

may not be adequately represented in this action," Coalition's Mot. 5, pointing out that

in two of the cases, the government has consented to a preliminary injunction against

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                    **Page 11**

the collection of duties, actions that, it argues, "directly undermine the intended effects

of the Proclamation, including the economic benefits members of the Coalition are

intended to receive," *id*. at 6 (citing the entry of a consented preliminary injunction

order in Ct. No. 20-00032, ECF Nos. 39 (conf.) & 40 (pub.); Ct. No. 20-00037, ECF Nos. 28

(conf.) & 29 (pub.)).  The Coalition also points to a third case in which the government

consented to an order that enjoins liquidation of affected entries while litigation is

pending but does not prevent the collection of estimated duties.  Coalition Mot. 6 (citing

the entry of a consented-to order in Ct. No. 20-00048, ECF No. 18).  The Coalition's

argument is not persuasive.  The orders to which the Coalition objects enjoined the

collection of cash deposits based on required bonding that the United States deemed

sufficient to protect its interests for the period of time the cases are being adjudicated on

the merits.  In summation, the interest of the United States in litigating these cases is at

least as compelling as that claimed by the would-be intervenors.

Nor have the members of the Coalition shown that they will be in a position to

make arguments other than those the government has made, or will make, in the

litigation of the twelve cases.  The claims of the various plaintiffs raise various questions

of constitutional law and statutory interpretation.  Similarly, the Coalition's own

proposed submissions indicate that its arguments would raise questions of law should

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                    **Page 12**

it be permitted to intervene.  *See, e.g.*, Mot. for J. on the Pleadings (Ct. No. 20-00032)

(Mar. 20, 2020), ECF No. 61; Mot. for Partial J. on the Pleadings (Consol. Ct. No.

20-00037) (Mar. 20, 2020), ECF No. 56.  To the extent any questions of fact will be

material to a resolution of these actions, they necessarily would pertain to matters of

record pertaining to the issuance of Proclamation 9980 rather than to factual issues the

Coalition would be in a position to address through its participation.

### B. The Court Denies Permissive Intervention Because Intervention Will Unduly Delay or Prejudice the Adjudication of the Rights of the Parties

USCIT Rule 24(b)(1) provides that "the court may permit anyone to intervene

who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim

or defense that shares with the main action a common question of law or fact."  For the

purpose of ruling on permissive intervention, we assume, without deciding, that the

individual members of the Coalition are given a conditional right to intervene by the

Customs Courts Act, 28 U.S.C. § 2631(j), or have a defense that shares questions of law

concerning the legal validity of the Proclamation that would be in common with

questions of law relating to the defense of the Proclamation the government can be

expected to assert.

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                     **Page 13**

As directed by statute and the Court's rules, the court considers "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  28 U.S.C. § 2631(j)(2); *see* USCIT R. 24(b).  We note, in this regard, that six plaintiffs have expressed opposition to the Coalition's intervention.  In exercising its discretion under § 2631(j)(2) and Rule 24(b), the court concludes that adding the Coalition as intervenors will burden the plaintiffs in all twelve actions with the need to respond to additional submissions and, unavoidably, also cause delays.  These burdens and delays are not justified by broadening this litigation to allow the intervention that is sought here.  In summary, allowing the intervention would not promote the principle expressed in USCIT Rule 1 that this Court's rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

**C.  None of the Member Companies Has Qualified Individually for Intervention**

In his concurring opinion, Judge Baker raises certain complex issues that pertain generally to the legal status and capacity of the Coalition and whether the Coalition permissibly may represent the interests of its member companies as a defendant-intervenor.  We hold today that neither the Coalition nor any of its individual member companies have demonstrated that they should be permitted to intervene in any of

**Court No. 20-00032, Consol. Court No. 20-00037, Court No. 20-00046,**
**Court No. 20-00047, Court No. 20-00048, Court No. 20-00049,**
**Court No. 20-00052, Court No. 20-00053, Court No. 20-00056, Court No. 20-00066,**
**Court No. 20-00098, and Court No. 20-00118.**                                    **Page 14**

these twelve actions.  Because none of the member companies may intervene

individually, it necessarily follows that the Coalition may not be a defendant-intervenor

on behalf of those member companies, regardless of its capacity or status.  Therefore,

we do not reach, and leave for another day, the issues pertaining to the legal status and

capacity of the Coalition, and its authority to represent its members, that Judge Baker

addresses in his concurring opinion.

### III. CONCLUSION AND ORDER

Upon consideration of the Coalition's motions to intervene in these twelve

actions, and all papers and proceedings had herein, and upon due deliberation, it is

hereby

**ORDERED** that any stays in effect in any of the twelve actions are hereby lifted
solely for the purpose of the court's ruling on the Coalition's motions to intervene in
those cases; and it is further

**ORDERED** that the motions to intervene in each of these twelve actions be, and
hereby are, denied both as to the Coalition and as to each of its individual member
companies; and it is further

**ORDERED** that all other motions filed by the Coalition be, and hereby are,
denied as moot.

/s/ Timothy C. Stanceu
/s/ Jennifer Choe-Groves
Timothy C. Stanceu, Chief Judge
Jennifer Choe-Groves, Judge

Dated:        January 20, 2021
              New York, New York

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 1

Baker, J., concurring

*Baker*, Judge, concurring: "The American system of civil litigation draws important differences between the parties to a case and everyone else." Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 273 (2020). If outsiders parachute into a case in federal district court or our Court via intervention, they "can conduct discovery, participate fully at trial, and pursue an appeal in the event of a judgment." *Id.* at 274. And they might "block[] settlement" agreed to by the original parties. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996) (Posner, J.).

Because intervention can "impose substantial costs on the parties and the judiciary," *id.*, it behooves the "federal courts to . . . th[ink] hard about who is eligible to become a party." Nelson*,* 106 Va. L. Rev. at 273. This is especially true given that the law governing intervention "is a mess." *Id.*

These twelve actions, which involve challenges by importers to tariffs on steel nails imposed by the President for national security reasons, are an opportunity for us to think hard not only about *who* is eligible to become a party in federal court, but also about *what* is eligible to become a party. Before us are the identical motions of the American Steel Nail Coalition, which describes itself as an unincorporated association of domestic steel nail producers, to intervene as a party defendant in each case in this sprawling litigation. It seeks to

Baker, J., concurring

defend tariffs imposed by the President on the Coalition's competitors, importers of steel nails (including the plaintiffs in these cases).

I concur with my colleagues in denying the motions to intervene. I write separately to take this opportunity to think hard about the intervention questions that the parties originally briefed and the additional questions that we asked the parties to address, including the Coalition's nature (is it an entity or an ad hoc group?), associational standing, and capacity to be sued as a party defendant.

As explained below, although the Constitution does not require the Coalition to demonstrate standing here—a question that the Supreme Court only resolved while these intervention motions were pending—the Coalition's motions to intervene are legal nullities because it lacks any legal existence. Moreover, even if the Coalition has legal existence or the lack of such existence is not fatal to its motions, its lack of capacity to sue or be sued in any federal court is.

Either one of those reasons standing alone is enough to deny the Coalition's intervention motions. But even if the Coalition's motions are not legal nullities and it has the capacity to sue or be sued, the Coalition is flatly ineligible for either intervention as of right or permissive intervention.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 3

Baker, J., concurring

Although my colleagues do not decide the question, in my view the Coalition is ineligible for intervention as of right because it has no protectable legal interest in the tariffs it seeks to defend. Moreover, even if the Coalition has a legally protected interest in the tariffs, I agree with my colleagues that the Coalition is still ineligible for intervention as of right because its notional interest in these suits is adequately represented by the government.

The Coalition is also disqualified from permissive intervention under either of the applicable pathways for such intervention—questions my colleagues do not reach. The Coalition is ineligible under the first such pathway, a statute granting outsiders *with standing* a conditional right to intervene, because the Coalition lacks associational standing to represent its members.

Likewise, the Coalition is ineligible under the second such pathway, a provision in our rules allowing for intervention when the intervenor shares a defense with the defendant, because Plaintiffs have no claim against the Coalition. *A fortiori*, the Coalition shares no defense with the government.

Finally, even if the Coalition is otherwise eligible for permissive intervention, which is a necessary but not sufficient condition for such intervention, I concur with my colleagues' discretionary denial of leave to intervene because of the resulting prejudice to the parties and burdens on the Court.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 4

Baker, J., concurring

That all said, I appreciate that the Coalition's members would at least
like to have their views heard in this litigation. But there is another, far less
costly—and, as here, too often overlooked—mechanism for having outsider
views heard that creates no prejudice for the parties and imposes far fewer
burdens on the Court than the comparatively drastic step of intervention. In-
terested outsiders that wish their views heard can move to participate as *amici
curiae*, and in my view, we should freely grant such leave when sought.

## Statutory and Factual Background

Section 232 of the Trade Expansion Act of 1962, as amended, authorizes
the President to take certain actions to reduce imports of goods to "[s]afe-
guard[] national security." 19 U.S.C. § 1862. Specifically, upon a report of the
Secretary of Commerce and subject to certain procedures and conditions, the
statute authorizes the President to adjust the imports of an article that is "be-
ing imported into the United States in such quantities or under such circum-
stances as to threaten to impair the national security." *Id.* § 1862(c)(1)(A).

In 2017, the Secretary undertook a Section 232 investigation of the ef-
fects of imported steel on national security. After public hearings and receiving
comments from various quarters, including both importers and domestic pro-
ducers, the Secretary issued a report finding that steel imports threatened

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 5

Baker, J., concurring

national security.[1] Based on this report, in 2018 the President issued Procla-
mation 9705, which imposed duties on imported raw steel. *See* Proclamation
No. 9705 of March 8, 2018, *Adjusting Imports of Steel into the United States*,
83 Fed. Reg. 11,625 (Mar. 15, 2018).

In 2020, the President issued the proclamation challenged in these suits,
Proclamation 9980, which extended Proclamation 9705's duties to certain steel
*derivative* products, including steel nails, not previously addressed by the Sec-
retary's earlier investigation and report (or any report). *See* Proclamation No.
9980, *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel
Articles into the United States*, 85 Fed. Reg. 5281 (Jan. 29, 2020). The President
explained that the purpose of extending the tariffs to steel derivative products
was to prevent the "ero[sion of] the customer base for U.S. producers of . . .
steel" and circumvention of Proclamation 9705's duties caused by imports of
such products. *Id*. at 5282.

Unlike Proclamation 9705, Proclamation 9980 was not preceded by an
investigation by the Secretary, administrative hearings, and the opportunity

---

[1] *See generally* U.S. Dep't of Commerce, Bureau of Industry & Security, The Effect of
Imports of Steel on the National Security (Jan. 11, 2018), https://www.bis.doc.gov/in
dex.php/documents/steel/2224-the-effect-of-imports-of-steel-on-the-national-security
-with-redactions-20180111/file, 85 Fed. Reg. 40,202 (Dep't Commerce July 6, 2020).

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 6

Baker, J., concurring

for public comments by anyone, including members of the Coalition.[2] In short,
Proclamation 9980's tariffs on steel nail importers came out of the blue insofar
as the Coalition is concerned. From the Coalition's happy perspective, Procla-
mation 9980 represents found money.

Plaintiffs in these twelve actions,[3] domestic importers of steel nails, chal-
lenge Proclamation 9980 on various Administrative Procedure Act and non-
statutory review grounds. Defendants are the United States, the President,
and various other officials and agencies charged with enforcement of Procla-
mation 9980.

### The Coalition's Intervention Motions

The Coalition moved to intervene as a party defendant in each of these
cases and tendered a proposed answer for filing in each case. *See*, *e.g.*, ECF 47.[4]
Shortly thereafter, the Coalition presumed to file dispositive motions and other

[2] For more background on Section 232, Proclamation 9705, and Proclamation 9980,
see *J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1369–72 (CIT 2020).

[3] By consent of the parties, eight of these actions have been stayed. The four active
cases are *PrimeSource Bldg. Prods., Inc. v. United States*, Ct. No. 20-32; *Oman Fas-
teners, LLC v. United States*, Consol. Ct. No. 20-37; *J. Conrad LTD v. United States*,
Ct. No. 20-52; and *Metropolitan Staple Corp. v. United States*, Ct. No. 20-53.

[4] Unless otherwise indicated, all record citations are to documents filed in the lead
case, *PrimeSource Building Products, Inc. v. United States*, Ct. No. 20-32. Citations
to page numbers in the record refer to the pagination found in the ECF header at the
top of each page.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 7

Baker, J., concurring

merits briefs in the four active cases even though its motions for intervention
were still pending.[5] We ordered the parties not to respond to the Coalition's
merits filings pending further order of the Court. *See* ECF 62.

Plaintiffs in six of these suits affirmatively oppose the Coalition's mo-
tions to intervene.[6] The government takes no position, and no existing party
affirmatively supports intervention.

Other than the bare assertion that its members[7] comprise "the largest
producers of steel nails in the United States," ECF 47, at 4, neither the Coali-
tion's motions to intervene nor its proffered answers contain any allegations,

---

[5] *See* ECF 61 (motion for judgment on the pleadings); *Oman Fasteners, LLC v. United States, et al.*, Consol. Ct. No. 20-37, ECF 56 (motion for partial judgment on the plead-ings); *J. Conrad LTD v. United States,* Ct. No. 20-52, ECF 41 (response to Plaintiff's preliminary injunction motion); *Metropolitan Staple Corp. v. United States*, Ct. No. 20-53, ECF 32 (same).

[6] *See* ECF 53; *Oman Fasteners, LLC v. United States, et al.*, Consol. Ct. No. 20-37, ECF 48; *Astrotech Steels Private Limited v. United States*, Ct. No. 20-46, ECF 28; *Trinity Steel Private Ltd. v. United States*, Ct. No. 20-47, ECF 24; *New Supplies Co., Inc. v. United States*, Ct. No. 20-48, ECF 23; *Tempo Global Resources LLC v. United States*, Ct. No. 20-66, ECF 18 (order granting the plaintiff an extension of time to oppose intervention; the case was subsequently stayed).

[7] As of its most recent filing, the Coalition's ten members are Mid Continent Steel & Wire, Inc.; KYOCERA SENCO Industrial Tools, Inc.; Tree Island Wire (USA) Inc.; Specialty Nail Company; Legacy Fasteners, LLC; American Fasteners Co., Ltd.; the Pneufast Co.; Maze Nails; MAR-MAC Industries, Inc.; and Anvil Acquisition Corp. *See Geekay Wires Ltd. v. United States*, Ct. No. 20-118, ECF 8, at 1 n.1 (June 15, 2020).

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                     Page 8

Baker, J., concurring

much less evidentiary substantiation,[8] concerning the Coalition's nature, pur-

poses, activities, associational standing, authority to represent its members,

and capacity to sue or be sued. We therefore ordered the Coalition to file sup-

plemental briefing and any supporting evidence addressing these topics. ECF

63. The Coalition responded, *see* ECF 69, as did the plaintiffs opposing inter-

vention in non-stayed cases. *See* ECF 74; *Oman Fasteners, LLC v. United*

*States*, Consol. Ct. No. 20-37, ECF 71.

The only evidentiary materials the Coalition included in its response

were the declarations of executives of the nine companies then comprising the

Coalition,[9] which the Coalition's supplemental brief asserts account "for a su-

per-majority of the production of U.S. steel nails which were included in Annex

2 to Presidential Proclamation 9980." ECF 69, at 8.

---

[8] The Coalition attached a news article as an exhibit to its motion and quotes it for
the proposition that one of its members, Mid Continent, "is the 'largest producer of
U.S. nails.' " ECF 47, at 4 (quoting Katie Lobosco, *Largest US Nail Manufacturer*
*Clings to Life under Steel Tariffs*, CNN Business, Sept. 4, 2018 (available at https://
money.cnn.com/2018/09/04/news/companies/tariffs-layoffs-mid-continent-nail/index
.html)). This article, however, is inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802;
*see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (finding
newspaper article offered to prove the truth of what was reported to be inadmissible
hearsay).

[9] A tenth member joined later. *See supra* note 7.

Baker, J., concurring

These executives, speaking on behalf of their respective companies—notably, *not* on behalf of the Coalition—state that their companies are domestic producers of steel nails that authorized the Coalition to represent their interests with respect to Proclamation 9980. *See id.* at 20–36. All state that their respective companies purchase steel wire rod, the raw material used to produce steel nails. *See, e.g.*, *id.* at 22. Apparently only one member, however, purchases steel wire rod from *exclusively* domestic steel producers.[10]

---

[10] The nine declarations are substantially identical except regarding the source of steel wire rod purchased by each declarant's company. One executive conspicuously states that his company purchases steel wire rod "from *only* American steel companies." Declaration of Clifford Mentrup, ECF 69, at 22 ¶ 2 (emphasis added). Seven other declarants state that their companies purchase steel wire rod "from American steel companies." *See, e.g.*, Declaration of Chris M. Pratt, ECF 69, at 30. Given this careful choice of words, I infer that unlike Mr. Mentrup's company, these seven members of the Coalition do not purchase steel from *exclusively* domestic producers. Indeed, the (inadmissible) CNN news article attached as an exhibit to the Coalition's intervention motions quotes Mr. Pratt as stating that Proclamation 9705's tariffs on imported steel wire rod *injured* his company, Mid-Continent Steel & Wire, because domestic steel suppliers could not "supply enough raw material for Mid Continent." ECF 47, at 13. The remaining declarant confirms that his company purchases steel wire rod "from multiple sources, including American steel companies." Declaration of Remy Stachowiak, ECF 69, at 36.

Although not relevant to the grounds upon which my colleagues and I deny the Coalition's intervention motions, I note that protecting domestic nail manufacturers that use *imported* steel wire rod, as all but one of the Coalition's members appear to do in some unknown measure, is assuredly not the purpose of Proclamation 9980, which instead seeks to protect customers of domestic steel producers. *See* Proclamation 9980, 85 Fed. Reg. at 5282.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                              Page 10

Baker, J., concurring

Several executives indicate that since the Proclamation took effect, prices and demand for their respective companies' nails have increased. *See id.* at 20, 24, 26, 28, 34, 38. All indicate that they anticipate demand and prices for their respective companies' nails will drop if Proclamation 9980 is declared unlawful, *see id.* at 20–36, presumably because their competitors' prices will drop.

In its supplemental brief, the Coalition asserts that it "was formed by the mutual consent of its members to achieve a common purpose—defending the lawfulness and ensuring the immediate and ongoing enforcement of Proclamation 9980," and that it is analogous to a "trade organization." *Id.* at 11. I take this statement of counsel, coupled with the Coalition's failure to directly respond to one of our questions[11] and to submit any affidavit or declaration by a person authorized to speak for the *Coalition*, as an admission that the Coalition is not a preexisting or even newly created entity of any kind but rather a one-off, ad hoc group of companies that jointly retained counsel to defend Proclamation 9980.

---

[11] *See* ECF 63, at 4 (ordering the Coalition to address, *inter alia*, whether "the Coalition [is] an ongoing entity with regular activities representing the interests of its members or it is an ad hoc group of companies assembled solely for purposes of intervening in this litigation").

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 11

Baker, J., concurring

## Discussion

The Coalition moves to intervene as of right under USCIT Rule 24(a)
and, in the alternative, for permissive intervention under USCIT Rule 24(b).
I address each of these grounds in turn, but before I do, I first address the
threshold questions of the Coalition's constitutional standing, legal existence,
and capacity to be sued.

## I.   Constitutional standing

"Article III of the Constitution limits the exercise of the judicial power to
'Cases' and 'Controversies.' " *Town of Chester, N.Y. v. Laroe Estates*, 137 S. Ct.
1645, 1650 (2017). The leading modern case explains that a justiciable Article
III case or controversy requires a "party invoking federal court jurisdiction" to
demonstrate, as "the irreducible constitutional minimum of standing," (1) that
it has suffered "an injury in fact," that is, "an invasion of a legally protected
interest which is (a) concrete and particularized, and (b) actual or imminent,
not conjectural or hypothetical"; (2) a "causal connection between the injury
and the conduct complained of"; and (3) "it must be likely that the injury will
be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555,
561–62 (1992) (cleaned up).

Defendants, as well as plaintiffs, must possess constitutional standing.
*See McConnell v. FEC*, 540 U.S. 93, 233 (2003) (stating "that because the

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 12

Baker, J., concurring

[defendant agency] has standing, . . . we need not address the standing of the intervenor-defendants, whose position here is identical to the [agency's]," thereby implying that at least one defendant must have standing), *overruled in part on other grounds*, *Citizens United v. FEC*, 558 U.S. 310 (2010); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (stating that "[s]tanding to sue *or defend* is an aspect of the case-or-controversy requirement" of Article III) (emphasis added); *Samsung Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1378 (Fed. Cir. 2008) (same); *see also Diamond v. Charles*, 476 U.S. 54, 62 (1986) (observing that "a State has standing to defend the constitutionality of its statute").

The Coalition, however, argues that it need not independently demonstrate constitutional standing to defend Proclamation 9980 because it can piggyback on the government's standing. *See* ECF 69, at 12 (citing *Canadian Wheat Bd. v. United States*, 637 F. Supp. 2d 1329 (CIT 2009)). In *Canadian Wheat*, a decision of this Court noted a circuit split over whether putative intervenors must independently demonstrate their constitutional standing. *See* 637 F. Supp. 2d at 1338–42.[12]

---

[12] *Compare San Juan Cty. v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (holding that Article III does not require putative intervenors to demonstrate constitutional standing so long as another party with constitutional standing on the

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 13

Baker, J., concurring

After acknowledging the Federal Circuit had reserved the question, *see*
637 F. Supp. 2d at 1338 (citing *Landmark Land Co. v. FDIC*, 256 F.3d 1365,
1382 (Fed. Cir. 2001)), *Canadian Wheat* agreed with those circuits holding that
intervenors need not demonstrate independent standing, reasoning that once
a "case or controversy" exists, "so long as the parties with standing remain in
the case, the court's jurisdiction continues regardless of the presence of inter-
venors." *Id.* at 1342.[13]

The Supreme Court seemingly resolved this circuit split in 2017 by ap-
plying *McConnell*'s rationale, albeit without acknowledging that decision. In

---

same side as the intervenor remains in the case), *with Mausolf v. Babbitt*, 85 F.3d
1295, 1300 (8th Cir. 1996) (holding that putative intervenors must always demon-
strate constitutional standing).

[13] The persistence of this circuit split puzzles me, as *McConnell* seemingly resolved
the question of whether an intervenor must demonstrate constitutional standing. In
*McConnell*, one of the plaintiff-appellees challenged the constitutional standing of
members of Congress who had intervened in the district court to defend the chal-
lenged statute. The Court stated that it was unnecessary to address the intervenor-
defendants' constitutional standing because the defendant agency had standing and
the former's "position here [was] identical to" the agency's. *McConnell*, 540 U.S.
at 233. Thus, *McConnell* allowed the intervenor-defendants to piggyback on the gov-
ernment's constitutional standing because the intervenor-defendants' position was
congruent with the government's.

 The *McConnell* Court then reached the merits. If an intervenor-defendant taking
the same position as the defendant were required to demonstrate constitutional
standing for an Article III case or controversy to exist, the Court could not have
skipped over the jurisdictional standing question before reaching the merits. It also
necessarily follows from *McConnell* that if an intervenor takes a different position
from an existing party, i.e., seeks different or additional relief, then the intervenor
must demonstrate constitutional standing.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                     Page 14

Baker, J., concurring

*Town of Chester*, the Court observed that under Article III, " 'standing is not dispensed in gross.' " *Id*. at 1650 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id*. (quoting *Davis*, 554 U.S. at 734). Under these principles, in cases with multiple plaintiffs "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id*. at 1651.

Applying these principles in the context of intervention as of right, the Supreme Court held that "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins as a plaintiff, a coplaintiff, or an intervenor as of right." *Id*. Therefore, "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Id*.[14] This holding tracks exactly with the reasoning of *McConnell. See supra* note 13.

Although courts agree that *Town of Chester* requires that an intervenor seeking *different* relief must demonstrate standing, some courts, judges, and commentators read it as not deciding whether (as here) an intervenor seeking

---

[14] Although the context in *Town of Chester* was intervention as of right, the Supreme Court's reasoning—representing the application of constitutional standing principles—necessarily applies with equal force to permissive intervention.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 15

Baker, J., concurring

the *same* relief sought by an existing party must also demonstrate standing.

*See, e.g.*, *Kane Cty., Utah v. United States*, 950 F.3d 1323, 1331–32 (10th Cir.

2020) (Tymkovich, C.J., dissenting from denial of rehearing en banc); *Old Do-*

*minion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223, 1232 n.2

(D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 794 (2019); Zachary N. Ferguson, *Rule*

*24 Notwithstanding: Why Article III Should Not Limit Intervention of Right*,

67 Duke L.J. 189, 193 (2017).

After the pending intervention motions were briefed, the Supreme Court

put to rest these lingering doubts. In *Little Sisters of the Poor Saints Peter &*

*Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), a group of nuns intervened

in the district court to defend a challenged exemption to agency regulations

mandating the provision of contraceptive benefits. The district court enjoined

the agency's enforcement of the regulatory exemption, and the nuns (as well

as the government) appealed to the Third Circuit, which dismissed the nuns'

appeal for lack of constitutional standing and affirmed the district court on the

merits.

Citing *Town of Chester*, the Supreme Court explained that the nuns did

not have to demonstrate constitutional standing because they sought the same

relief as the government. *See id.* at 2379 n.6 (as "both the Federal Government

Baker, J., concurring

and the [nuns] asked the court to dissolve the injunction against the religious

exemption[,] [t]he Third Circuit . . . erred by inquiring into the Little Sisters'

independent Article III standing"). In other words, *Little Sisters of the Poor*

applied the *McConnell* principle that a defendant-intervenor seeking the same

relief as the defendant need not demonstrate constitutional standing.

 *Town of Chester*, as recently clarified by *Little Sisters of the Poor*, thus

definitively resolved the persistent circuit split noted by the CIT in *Canadian

Wheat*. Article III does not require a putative intervenor—whether as of right

or permissive—to demonstrate independent constitutional standing, so long as

it seeks the same relief as one of the parties to the case.

 Here, like the government, the Coalition seeks to defend Proclamation

9980, and (so far) it has not opposed any step taken by the government.[15] For

that reason, Article III does not require the Coalition to demonstrate independ-

ent constitutional standing and, by extension, associational standing. *See Int'l

Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*,

---

[15] As discussed further below, the Coalition grumbles that the government, without
admitting liability, consented to entry of preliminary injunctions in eight of these
cases shortly before the Coalition sought to intervene. *See* ECF 47, at 5–6. The Coa-
lition does not affirmatively seek vacatur of the injunctions, so I consider the issue
moot for purposes of determining whether the relief sought by the Coalition differs
from that sought by the government.

Baker, J., concurring

477 U.S. 274, 281–82 (1986) (explaining associational standing of organization to represent its members). Instead, at least insofar as Article III is concerned, the Coalition can ride the government's standing coattails to defend Proclamation 9980.[16]

## II.   Legal existence

"One of the most fundamental precepts of Anglo-American jurisprudence is that a right, to be enforced in a court of law, must have a 'holder' or 'bearer.' " *Motta v. Samuel Weiser*, 598 F. Supp. 941, 948 (D. Me. 1984) (citing IV R. Pound, *Jurisprudence* 192 (1959)). A right must attach to some "legal unit." *Id.* (quoting Pound, *supra*, at 192). Such a legal unit is either a "natural person or some other entity which has been accorded legal personality by common law or statute." *Id.* In other words, legal existence is the *sine qua non* for the attachment of any rights or liabilities.

Legal existence, a "substantive" question going to the status of a putative party, is a "separate and distinct legal concept[] from" capacity, a "procedural" question concerned with a putative party's "suability." *See Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 110–11 (S.D.N.Y. 1992) (citing *Busby v. Elec.*

---

[16] Nevertheless, as explained below, the statute under which the Coalition claims a conditional right to intervene—28 U.S.C. § 2631(j)—does require the Coalition to show constitutional, and hence associational, standing.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                  Page 18

Baker, J., concurring

*Utilities Emps. Union*, 323 U.S. 72, 76–77 (1944) (Frankfurter, J., concurring));
*see also Motta*, 598 F. Supp. at 948 ("Want or loss of legal personality is quite
another thing from lack or loss of capacity for legal transactions.") (quoting
Pound, *supra*, at 276–77).[17]

Examples from corporate and bankruptcy law readily illustrate the dis-
tinction between legal existence and capacity. A corporation in involuntary
bankruptcy has legal existence, but it lacks the capacity to sue or be sued; it
must sue or be sued in the name of the bankruptcy trustee. *See, e.g.*, *In re C.W.
Mining Co.*, 636 F.3d 1257, 1263 (10th Cir. 2011) ("The only person with stand-
ing or legal capacity to represent [the corporate Debtor in involuntary bank-
ruptcy] in any litigation, including these appeals, is its Trustee.").

On the other hand, once a corporation has filed articles of dissolution and
ceases to exist under applicable state law, it is incapable of even filing for bank-
ruptcy and the question of capacity does not even arise. *See, e.g.*, *In re Midpoint
Dev., L.L.C.*, 466 F.3d 1201, 1207 (10th Cir. 2006) (bankruptcy filing by

---

[17] This distinction is reflected in our Rule 9, which distinguishes between legal exist-
ence and capacity. *Compare* USCIT R. 9(a)(1)(A) (addressing "a party's capacity to
sue or be sued") *with* USCIT R. 9(a)(1)(C) (addressing "the legal existence of an orga-
nized association of persons that is made a party").

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046, 20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056, 20-00066, 20-00098, and 20-00118

Page 19

Baker, J., concurring

purported corporation was a legal nullity because the corporation no longer had legal existence after filing articles of dissolution).

Although legal existence and capacity are distinct concepts, both "are prerequisites to the suability of an entity." *Roby*, 796 F. Supp at 110. Indeed, legal existence is an antecedent question to capacity: An entity lacking legal existence cannot sue or be sued, not because it lacks capacity, but rather because the entity simply does not exist in the eyes of the law. *See House v. Mitra QSR KNE, LLC*, No. CV GLR-17-412, 2018 WL 3353068, at *3 (D. Md. May 31, 2018) ("[L]egal existence is a prerequisite to having the capacity to sue").

In the absence of legal existence or specific statutory authorization,[18] a federal court filing by a purported entity is a nullity. *Id.* ("[A] suit brought in the name of a . . . party [lacking legal existence] is a mere nullity") (cleaned up); *Youell v. Grimes*, 203 F.R.D. 503, 507–09 (D. Kan. 2001) (group of Lloyd's of London underwriters was not an unincorporated association, lacked legal existence, and therefore could not be sued as a counterclaim defendant); *Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001)

---

[18] *Cf.* 19 U.S.C. §§ 1677(9)(F), (C) (defining "interested party" for purposes of antidumping and countervailing duty proceedings as including "an association, a majority of whose members is composed of . . . manufacturer[s], producer[s], or wholesaler[s] in the United States of a domestic like product").

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 20

Baker, J., concurring

("[A] group of persons working together for a common purpose must first be found to have legal existence" before it can sue); *In re Asbestos Prods. Liab. Litig.*, 311 F.R.D. 152, 155–56 (E.D. Pa. 2015) (lawsuits filed in the names of plaintiffs who died prior to filing were legal nullities because the purported plaintiffs lacked any legal existence). As a result, "the question whether an entity is . . . legally cognizable is so fundamental to the effectiveness of the Court's ultimate order that the Court must consider the issue on its own motion." *Motta*, 598 F. Supp. at 951.[19]

Here, I conclude that the Coalition has no legal existence. As plaintiff Oman Fasteners argues, *see* ECF 71 at 1–2, the Coalition is not an unincorporated association, which "is a term of art—every group that is not a corporation or partnership is not automatically an unincorporated association." *Roby*, 796 F. Supp. at 110. The common law generally defines "unincorporated association" as "a body of persons united without a charter, but upon the methods and

---

[19] There are very practical implications if the Coalition lacks legal existence. For instance, the Coalition seeks to intervene as a defendant. If we grant intervention and ultimately rule in favor of Plaintiffs, in theory we might award attorney's fees and costs to Plaintiffs and enter a money judgment against the Coalition. *See* USCIT R. 54(d). Such a money judgment would be meaningless because the Coalition is less than merely judgment-proof; it is a juridical illusion.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 21

Baker, J., concurring

forms used by incorporated bodies for the prosecution of some common enter-

prise." *Hecht v. Malley*, 265 U.S. 144, 157 (1924).

The Coalition's evidentiary submission demonstrates that it is an ad hoc

group of domestic nail manufacturers that seeks to defend the Proclamation;

on this record, the only joint action ever taken by its members appears to be

the retention of counsel to represent the Coalition in this lawsuit. There is no

indication that the Coalition has ever met, transacted any business, or issued

any public statements. Nor is there any indication that the Coalition has a

place of business, bank account, telephone number, officers, structure, or even

so much as an email address or rental mailbox at the UPS Store.

The Coalition's evidentiary submission—limited to declarations of senior

executives of its *members* speaking, not on the Coalition's behalf, but on each

member's behalf—gives the game away. If the Coalition had some existence

separate and apart from its members, presumably some person—a president,

chairperson, or chief executive officer selected by the Coalition's members—

could and would speak for it. No one speaks for the Coalition in this case or

otherwise—*other than its counsel*—because it has no existence separate from

its members in any sense whatsoever. In short, the Coalition is nothing more

than a name appended to a court filing.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 22

Baker, J., concurring

But an " 'association' that exists in name only is not an association at all, as that term is defined in both common and legal vernacular." *Motta*, 598 F. Supp. at 949; *see also, e.g.*, *Cal. Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1068 (N.D. Cal. 1970) (holding that "the most informal and transitory of organizations" with "no charter, by-laws or articles, no office or place of business, no mailing address, no bank account, no assets or obligations, and [that] never transacted any business" and "never met" was not an unincorporated association); *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 474 (La. 1990) ("[A]n unincorporated association, as a juridical person distinct from its members, does not come into existence or commence merely by . . . the fact that a number of individuals have simply acted together; there must also be an agreement whereby two or more persons combine certain attributes to create a separate entity for a legitimate purpose."); *cf. Brock*, 477 U.S. at 289 (for associational standing purposes, distinguishing "suits by associations on behalf of their members from class actions" by observing that the latter represents "an ad hoc union of injured plaintiffs who may be linked only by their common claims," while an "association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital"); *Craine v. NYSARC, Inc.*, 931 N.Y.S.2d 143, 145 (3d Dep't 2011) (local chapter

Baker, J., concurring

of non-profit corporation that elected its own officers, had its own federal employer identification number, maintained its own bank accounts, hired its own employees, and operated its own programs had "sufficient separate existence to be considered an unincorporated association" for purposes of legal existence to file suit).

Because the Coalition is not an unincorporated association, it cannot have any legal existence, which as noted above is a prerequisite for invoking the authority of a federal court absent statutory authorization. As a result, the Coalition's motions to intervene have the same legal effect as court filings made in the name of a deceased person, a fictitious person, an animal, an inanimate object, or a dissolved corporation—they are complete nullities.

## III.   Capacity

This Court's Rule 17(b) governs the capacity of parties to sue or be sued. For an individual, capacity is determined by the law of domicile, USCIT R. 17(b)(1), and for a corporation, capacity is determined by the law under which it was organized, USCIT R. 17(b)(2). For all other parties, capacity is determined "by the law of the appropriate state," except that "a partnership or other unincorporated association with no such capacity under that state's law

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118

Page 24

Baker, J., concurring

may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." USCIT R. 17(b)(3)(A).

As it is neither an individual nor a corporation, the Coalition asserts that it has legal capacity under Rule 17(b)(3)(A) because it is an unincorporated association and Plaintiffs seek to enforce substantive rights under federal law. *See* ECF 69, at 10 ("Plaintiffs raise claims pursuant to several federal statutes").[20]

Even assuming the Coalition is an unincorporated association for purposes of Rule 17(b)(3)(A) as it claims, the Coalition's capacity theory fails because Plaintiffs do not seek "to enforce a substantive right existing under the United States Constitution or laws" *against the Coalition*. USCIT R. 17(b)(3)(A).

For an unincorporated association to have capacity to be sued as a defendant in connection with a plaintiff's "enforce[ment] of a substantive right existing under the United States Constitution or laws," federal law must provide for a cause of action against the association. Examples abound.[21]

---

[20] The Coalition makes no claim that it has capacity under state law.

[21] A telephone service cooperative association had the capacity to be sued for alleged Fair Labor Standards Act violations. *Schmidt v. Peoples Telephone Union of Maryville, Mo.*, 138 F.2d 13, 14 (8th Cir. 1943). A college athletic association had the capacity to be sued for alleged Americans with Disabilities Act, Rehabilitation Act,

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 25

Baker, J., concurring

Here, Plaintiffs assert APA and nonstatutory review[22] claims for alleged

constitutional and statutory violations. Plaintiffs simply have no cause of ac-

tion against the Coalition under the APA, which provides that "the action for

judicial review [of agency action] may be brought against the United States,

the agency by its official title, or the appropriate officer." 5 U.S.C. § 703. "If the

party in question is not an 'agency,' its actions are not subject to review under

the APA." *Byers v. Intuit, Inc.*, 564 F. Supp. 2d 385, 413 (E.D. Pa. 2008). Nor

do Plaintiffs have any nonstatutory review claims against the Coalition, be-

cause the Coalition has no role in enforcing or administering Proclamation

9980. Because Plaintiffs have no cause of action or claim of any sort against

---

and Sherman Antitrust Act violations. *See Bowers v. NCAA*, 9 F. Supp. 2d 460, 472–
73 (D.N.J. 1998). A local bar association had the capacity to be sued under 42 U.S.C.
§ 1983 for alleged constitutional violations. *Hall v. Witteman*, 2008 WL 4490620, at
**2–3 (D. Kan. Oct. 1, 2008) (noting that Rule 17 "allow[s] voluntary unincorporated
associations to be sued in their own name in federal court *for the purpose of enforcing
a federal right*" (emphasis added)). The Palestine Liberation Organization had the
capacity to be sued for tort liability under federal maritime law. *Klinghoffer v. S.N.C.
Achille Lauro*, 739 F. Supp. 854, 865–66 (S.D.N.Y. 1990), *vacated on other grounds*,
937 F.2d 44 (2d Cir. 1991).

[22] "Nonstatutory review" has been defined as "the type of review of administrative
action which is available, not by virtue of those explicit review provisions contained
in most modern statutes which create administrative agencies, but rather through
the use of traditional common-law remedies . . . against the officer who is allegedly
misapplying his statutory authority or exceeding his constitutional power." 14 Wright
& Miller, *Fed. Practice and Procedure* § 3655 (4th ed. 2020) (omission in original)
(quoting Antonin Scalia, *Sovereign Immunity Nonstatutory Review of Federal Admin-
istrative Action: Some Conclusions from the Public-Lands Cases*, 68 Mich. L. Rev. 867,
870 (1969–1970)).

Baker, J., concurring

the Coalition under federal law, the Coalition has no capacity to be sued and,

hence, no capacity to intervene as a defendant.[23]

## IV.   Intervention as of right under Rule 24(a)

The Coalition first seeks to intervene as of right under our Rule 24(a).

That rule, taken verbatim in relevant part from Federal Rule of Civil Proce-

dure 24, provides for intervention as of right by anyone who "on timely motion

. . . claims an interest relating to the property or transaction that is the subject

---

[23] The Coalition does not make, and therefore has waived, any argument that it has
capacity to be sued because it seeks to intervene to "be sued in its common name to
enforce" *its* "substantive right existing under" federal law to *defend* Proclamation
9980. USCIT R. 17(b)(3)(A). Even if the Coalition had not waived this argument, it
would fail because the Coalition—which did not participate in administrative pro-
ceedings at Commerce in connection with Proclamation 9980 because there were
none—has no substantive right under federal law. *Cf.* 28 U.S.C. § 2631(j)(1)(B)
(allowing "interested part[ies]" who were parties to antidumping and countervailing
duty proceedings at Commerce and/or the International Trade Commission to inter-
vene as a matter of right in CIT actions challenging antidumping and countervailing
duty determinations); *see also* 19 U.S.C. § 1677(9)(F), (C) (defining "interested party"
for purposes of antidumping and countervailing duty proceedings as including "an
association, a majority of whose members is composed of . . . manufacturer[s], pro-
ducer[s], or wholesaler[s] in the United States of a domestic like product.").

Section 232 allows government officials and "interested part[ies]" to request that the
Secretary of Commerce undertake an investigation into the effects of imports on na-
tional security, *see* 19 U.S.C. § 1862(b)(1)(A), but does not define "interested party."
Even assuming the Coalition could be an "interested party" for purposes of Section
232 if it had requested that the Secretary initiate a Section 232 investigation and
participated in subsequent administrative proceedings, the Coalition neither made
such a request nor participated in subsequent administrative proceedings, as there
were none. As a result, the Coalition is not an "interested party" for purposes of Sec-
tion 232. And even if it were, no federal statute gives it a "substantive right" to inter-
vene to defend Proclamation 9980.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046, 20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056, 20-00066, 20-00098, and 20-00118

Page 27

Baker, J., concurring

of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." USCIT R. 24(a)(2).

Rule 24(a) "sets out a four-part test." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (citing *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989)).[24] That test is: (1) "the motion must be timely," *id.*; (2) "the movant must claim some interest in the property [or transaction]" at issue that is " 'legally protectable'—merely economic interests will not suffice," *id.* (quoting *Am. Mar.*, 870 F.2d at 1562); (3) "that interest's relationship to the litigation must be 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.' "*id.* (quoting *Am. Mar.*, 870 F.2d at 1561) (emphasis in *Am. Mar.*); and (4) "the movant must demonstrate that said interest is not adequately addressed by the government's participation," *id.* (quoting *Am. Mar.*, 870 F.2d at 1560).

---

[24] Both *Wolfsen* and *American Maritime* involved Court of Federal Claims Rule 24, but in interpreting that rule the Federal Circuit looked to authorities applying Federal Rule of Civil Procedure 24. *See Wolfsen*, 695 F.3d at 1315–16; *Am. Mar.*, 870 F.2d at 1561. As Court of Federal Claims Rule 24, like our own Rule 24, is taken in relevant part from Federal Rule of Civil Procedure 24, the holding and reasoning of *Wolfsen* and *American Maritime* apply with equal force to motions to intervene in our Court.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                Page 28

Baker, J., concurring

There is no serious dispute that the Coalition's motions were timely,[25] so I will examine whether the Coalition satisfies the other three parts of this test.

## A.    The Coalition's interest

The Coalition's motions assert that its members have an "economic interest" in continued enforcement of Proclamation 9980's import duties, as its members (domestic producers of steel nails) compete with the importers subject to the duties, *see* ECF 47, at 3–5. But "mere[] economic interests will not suffice" under Rule 24 to establish a legally protectable interest. *Wolfsen*, 695 F.3d at 1315.

Here, the Coalition does not, nor could it, claim that Section 232 confers any legally protectable interest upon the Coalition or its members.[26] Unlike the antidumping and countervailing duty statutes, which provide specific rights to domestic producers to participate in administrative proceedings culminating in final agency action imposing such duties,[27] the Coalition and its members played no role in the issuance of Proclamation 9980, as there were no

---

[25] In each of these cases, the Coalition moved to intervene within a matter of days or a few weeks after the applicable plaintiff filed its complaint.

[26] I understand that my colleagues merely assume that the Coalition has such an interest rather than affirmatively deciding the question. *See ante* at 9.

[27] *See, e.g.*, 19 U.S.C. § 1671a(b)(1) (allowing an "interested party" to petition for commencement of a countervailing duty investigation); 19 U.S.C. § 1673a(b)(1) (allowing an "interested party" to petition for commencement of an antidumping proceeding).

Baker, J., concurring

underlying administrative proceedings, and it had no statutory right to partic-

ipate in any. Although the Coalition's members may indirectly benefit from

actions taken by the President under Section 232, they have no "interest . . .

which the substantive law [Section 232] recognizes as belonging to or being

owned by [them]." *Am. Mar.*, 870 F.2d at 1562.

## B.    Directness of any injury to the Coalition's interest

Even if the Coalition had a legally protected interest of some kind here,

it would still not qualify as an "interest" under Rule 24(a)(2) for a second and

independent reason. Any relief granted by this Court will only operate directly

and immediately against the government; any competitive injury to the Coali-

tion's members resulting from the invalidation of Proclamation 9980 will be

indirect—a result of market forces. That is not enough.

In *American Maritime*, the putative intervenor sought to intervene as a

defendant in the Court of Federal Claims in a contract dispute over a govern-

ment shipping subsidy. The putative intervenor, a competitor of the plaintiff,

argued that it would suffer competitive injury if the plaintiff prevailed and was

awarded the disputed subsidy. *American Maritime* held that "[f]ear of future

. . . competition" that might result from a court judgment in favor of a compet-

itor "does not reflect an interest in the property or transaction" within the

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 30

Baker, J., concurring

meaning of Rule 24(a). *See id.* at 1561. That holding squarely applies here; any

competitive injury to the Coalition's members resulting from invalidation of

Proclamation 9980 is too indirect to qualify as an "interest" for Rule 24(a).

## C.    Adequacy of the government's participation

Even if the Coalition asserted a cognizable interest within the meaning

of Rule 24(a) that was directly threatened by a judgment invalidating Procla-

mation 9980, the Coalition would still have to demonstrate that its interest "is

not adequately addressed by the government's participation." *Wolfsen*, 695

F.3d at 1315 (quoting *Am. Mar.*, 870 F.2d at 1560).[28] To do that, the Coalition

has the burden of establishing two elements.

First, it "must make a compelling showing that its interests may not be

adequately protected by the government insofar as there are aspects of the case

that the government might not—or might not be able to—pursue to their full-

est." *Id.* at 1316. Second, the Coalition "must overcome the presumption that

the government as sovereign adequately represents the interest of citizens con-

cerning matters that invoke 'sovereign interests.' " *Id.* (quoting *Standard*

---

[28] My colleagues conclude, as I do, that any interest of the Coalition is adequately
represented by the government. *Ante* at 9–12. The difference between us is that I
think the Federal Circuit's *Wolfsen*/*American Maritime* framework is the prism
through which we should analyze the question.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 31

Baker, J., concurring

*Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 572 (8th
Cir. 1998)).

As to the first element, the Coalition complains that, prior to its motion
to intervene, the government consented to preliminary injunctive relief in eight
of these cases barring the collection of Proclamation 9980's duties and that in
so doing the government undermined Proclamation 9980's effectiveness.
ECF 47, at 5–6. The Coalition's argument is unpersuasive for several reasons.

To begin with, I read the Coalition's complaints about the consent in-
junctions as make-weight grumbling to put some distance between it and the
government for purposes of satisfying Rule 24(a). The Coalition does not put
its money where its brief is—the Coalition refrains from requesting vacatur of
the injunctions, and as a result, any objection by the Coalition to these injunc-
tions is moot because the government consented to their entry before the Coa-
lition sought to intervene.

In any event, the Coalition's facts are wrong; without admitting to liabil-
ity, the government consented to entry of preliminary injunctions against the
collection of estimated duties in three of these cases, not eight, and in those
cases the plaintiffs were required to post a bond to protect the government's

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                      Page 32

Baker, J., concurring

interests.[29] If the government prevails in this litigation, it will collect the duties

in question, so those importers are not by any stretch out of the Proclamation

9980 woods.

Most importantly, the government's consent to entry of these prelimi-

nary injunctions for its own tactical litigation reasons does not detract from its

vigorous defense of Proclamation 9980 on the merits. Reasonable differences

in litigation strategy between the government and the Coalition do not demon-

strate an inability or unwillingness on the government's part to defend any

aspect of Proclamation 9980. *See Del. Valley Citizens' Council for Clean Air v.*

*Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982).

Even if the Coalition could demonstrate that the government is not de-

fending some aspect of Proclamation 9980, the Coalition would still have to

establish the second element of the test for demonstrating the inadequacy of

the government's representation—it must "overcome the presumption that the

---

[29] This Court entered consent orders enjoining the collection of Proclamation 9980 estimated duties at entry during the pendency of litigation in three cases. *See PrimeSource Bldg. Prods, Inc. v. United States*, Ct. No. 20-32, ECF 40 (Feb. 13, 2020); *Oman Fasteners, LLC v. United States*, Ct. No. 20-37, ECF 35 (Feb. 21, 2020); *Huttig Bldg. Prods., Inc. v. United States*, Ct. No. 20-45, ECF 30 (Mar. 4, 2020). The latter two cases were subsequently consolidated. In the five other cases referred to by the Coalition, the government agreed to consent orders enjoining liquidation of entries. For an explanation of the distinction between the payment of estimated duties at entry and liquidation, *see J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1370 (CIT 2020).

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    *Page 33*

Baker, J., concurring

government as sovereign adequately represents the interest of citizens con-

cerning matters that invoke 'sovereign interests.' " *Wolfsen*, 695 F.3d at 1316

(quoting *Standard Heating*, 137 F.3d at 572).

To overcome this presumption, the Coalition cites *Vivitar Corp. v. United*

*States*, 585 F. Supp. 1415 (CIT 1984), and argues that the government neces-

sarily does not adequately represent its private interests. *See id.* at 1418

("[T]his court is reluctant to view the Government's and [the putative interve-

nor's] interests as coincident, where [the putative intervenor's] interests are

purely private . . . and where the Government's interests are public and en-

forcement oriented.").

I think the Coalition places more weight on *Vivitar* than it can bear, as

in that case the government also took a legal position adverse to that of the

putative intervenor's. *See id.* More importantly, insofar as *Vivitar* is suscepti-

ble of the reading that the Coalition gives it, I think *Vivitar* is no longer per-

suasive authority. *Wolfsen* requires us to presume that the government's sov-

ereign interests and the Coalition's private interests *are* coincident. The Coa-

lition fails to carry its burden of demonstrating otherwise.

Baker, J., concurring

## V.   Permissive intervention under Rule 24(b)(1)

Alternatively, the Coalition contends that it qualifies for permissive intervention under both prongs of USCIT Rule 24(b)(1), which provides that upon "timely motion," we "may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute," or "(B) has a claim or defense that shares with the main action a common question of law or fact." USCIT R. 24(b)(1).

In exercising our discretion under Rule 24(b), we must also consider "whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT R. 24(b)(3). I first consider whether the Coalition is even eligible for permissive intervention under either prong of Rule 24(b)(1),[30] and then consider the effect that intervention might have on the original parties' rights.

### A.   Permissive intervention by statute

Rule 24(b)(1)(A) provides that we "may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute." USCIT R. 24(b)(1)(A). The Coalition contends that it possesses a conditional right to

---

[30] My colleagues assume, but do not decide, that the Coalition is eligible for permissive intervention under both prongs of Rule 24(b)(3). *Ante* at 12.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                   Page 35

Baker, J., concurring

intervene by operation of our Court's jurisdictional statute, which provides
that "any person who would be adversely affected or aggrieved by a decision in
a civil action" pending in this Court "may, by leave of court, intervene in such
action." 28 U.S.C. § 2631(j)(1).[31]

Although Federal Rule of Civil Procedure 24(b)(1)(A) has been criticized
as incoherent,[32] this Court has repeatedly held that 28 U.S.C. § 2631(j)(1) pro-
vides a "conditional right to intervene" for purposes of our Rule 24(b)(1)(A).
*See*, *e.g.*, *Ontario Forest Indus. Ass'n v. United States*, 30 CIT 1117, 1130
(2006). I see no reason to depart from that precedent.

### 1.   "Adversely affected or aggrieved"

Here, the Coalition asserts that its members will be "adversely affected
or aggrieved" for purposes of 28 U.S.C. § 2631(j)(1) if Plaintiffs' challenge to
Proclamation 9980 is successful. The phrase "adversely affected or aggrieved"

---

[31] Like permissive intervention under Rule 24(b)(1), *see* USCIT R. 24(b)(3), interven-
tion under 28 U.S.C. § 2631(j)(1) is qualified by a requirement that this Court "con-
sider whether the intervention will unduly delay or prejudice the adjudication of the
rights of the original parties." 28 U.S.C. § 2631(j)(2).

[32] *See*, *e.g.*, 6 *Moore's Fed. Practice—Civil* § 24.12 (2020) ("The concept of a federal
statute's conferring a conditional right to intervene is highly problematic and need-
lessly confusing."); *cf. United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642,
648 (D. Del. 1983) (holding that a statute that says "may" and doesn't specify the
conditions for intervention does not give any *right* to intervene, conditional or other-
wise).

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 36

Baker, J., concurring

in § 2631(j)(1) is taken from Section 10 of the APA, which confers a private

right of action for persons injured by final agency action. *See* 5 U.S.C. § 702

("A person suffering legal wrong because of agency action, or adversely affected

or aggrieved by agency action within the meaning of a relevant statute, is en-

titled to judicial review thereof.").

As used in the APA, "adversely affected or aggrieved" means Article III

"injury in fact." *Rohm & Haas Co. v. U.S. Int'l Trade Comm'n*, 554 F.2d 462,

463 (CCPA 1977) (citing *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972)); *see

also United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669,

690 n.14 (1973) (" 'Injury in fact' reflects the statutory requirement [in Section

10 of the APA] that a person be 'adversely affected' or 'aggrieved,' and it serves

to distinguish a person with a direct stake in the outcome of a litigation—even

though small—from a person with a mere interest in the problem."). It neces-

sarily follows that a putative intervenor invoking 28 U.S.C. § 2631(j)(1) must

demonstrate "injury in fact," i.e., constitutional standing.

**2.   Associational standing**

Here, the Coalition makes no claim that it has constitutional standing to

defend Proclamation 9980, but it contends in its supplemental brief that it has

associational standing to represent its members that do. *See* ECF 69, at 13–17.

Baker, J., concurring

"To establish standing based upon harm to one or more of its members (associational standing)," *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 689 (Fed. Cir. 2000), an association must demonstrate that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

The Coalition easily satisfies the third element of the *Hunt* test here, as neither its asserted defense nor the relief it seeks—a judgment upholding Proclamation 9980—requires the participation of its individual members. *See Reid v. Dep't of Commerce*, 793 F.2d 277, 279 (Fed. Cir. 1986) (distinguishing between "declaration, injunction[,] or some other form of prospective relief" requiring no participation of association members and "particularized relief dependent on the individual circumstances of each" association member). The Coalition, however, does not so easily navigate past the first and second *Hunt* shoals. I consider each in turn.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                     Page 38

Baker, J., concurring

### a.   The members' standing

To satisfy the first *Hunt* element, the Coalition must demonstrate that

"its members would otherwise have standing to [defend Proclamation 9980] in

their own right." *Gober*, 234 F.3d at 689. That is, the Coalition must show that

if Proclamation 9980 is invalidated, its members would suffer "injury in fact,

that is, an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical."

*Lujan*, 504 U.S. at 561 (internal quotation marks and citations omitted).

The Coalition submitted declarations of senior executives of its mem-

bers—all domestic nail manufacturers—stating that their respective compa-

nies fear competitive injury if Proclamation 9980's duties on their competi-

tors—importers of steel nails—are invalidated. *See* ECF 69, at 20–36. Such

competitive injury by operation of normal market forces ordinarily qualifies as

injury in fact for Article III purposes. *See AVX Corp. v. Presidio Components,*

*Inc.*, 923 F.3d 1357, 1364 (Fed. Cir. 2019) ("[C]ompetitive injury to a challenger

is highly likely where the government action has a natural price-lowering or

sales-limiting effect on the challenger's sales (compared to what prices or sales

would be in the absence of the government action)," including by "directly low-

ering competitors' prices for competing goods"); *see also Canadian Lumber*

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118

Page 39

Baker, J., concurring

*Trade All. v. United States*, 517 F.3d 1319, 1334 (Fed. Cir. 2008) (noting that

under the doctrine of competitor standing, it "is *presumed* (i.e., without affirm-

ative findings of fact) that a boon to some market participants is a detriment

to their competitors") (emphasis in original). Accordingly, the Coalition has

demonstrated injury in fact and hence constitutional standing, insofar as

*Lujan*'s "invasion of a legally protected interest" requirement is characterized

as prudential rather than constitutional.[33]

---

[33] One of the unsolved mysteries of the Supreme Court's standing jurisprudence is
whether "the term 'legally protected interest' do[es] some work in the [constitutional]
standing analysis." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093
(10th Cir. 2006) (en banc) (McConnell, J.). "The modifier 'legally protected' has ap-
peared episodically in Supreme Court opinions since its introduction in *Lujan*," *Jud.
Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 363 (D.C. Cir. 2005) (Williams, J., concur-
ring), and where the Court has used the term it has "not defined" its meaning. *Cottrell
v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017). Insofar as I can determine, the Fed-
eral Circuit has not directly addressed this question.

   Among other things, does Article III require "that the legally protected interest be
the plaintiff's" or, as in this case, the putative defendant-intervenor's? Guilds, *A Ju-
risprudence of Doubt: Generalized Grievances as a Limitation to Federal Court Access*,
74 N.C. L. Rev. 1863, 1871 n.58 (1996). I think not, as otherwise it "would contradict
third party standing jurisprudence." *Id.* I therefore agree with Judge Williams that
"[t]he requirement that the injury be to a legally protected interest is grounded on
prudential considerations" rather than Article III. *Jud. Watch*, 432 F.3d at 366
(cleaned up). For present purposes, the upshot is that the absence of any "protected
legal interest" of the Coalition's members in defending Proclamation 9980 is not fatal
to their *constitutional* standing; for Article III purposes, it suffices that the Coalition's
members will likely suffer concrete and particularized economic injury if Proclama-
tion 9980 is invalidated. But as discussed below, the absence of any such "protected
legal interest" is fatal to their prudential standing.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 40

Baker, J., concurring

"Beyond the constitutional requirements" of an Article III case or contro-

versy, "the federal judiciary . . . also adhere[s] to a set of prudential principles

that bear on the question of standing." *Valley Forge Christian Coll. v. Ameri-

cans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982).

In assessing claims of associational standing based on injury to an association's

members, courts also consider whether the association's members have pru-

dential standing. *See, e.g.*, *Reid*, 793 F.2d at 280.[34]

One prudential consideration bearing on standing is that "a party 'gen-

erally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interests of third parties.' " *Kowalski v. Tesmer*,

543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)).

This principle of third-party standing, sometimes referred to as *jus tertii* stand-

ing, "limit[s] access to the federal courts to those litigants best suited to assert

---

[34] Consideration of the Coalition's prudential standing to intervene as a defendant is appropriate here for at least two other reasons. First, as discussed above, the statute under which the Coalition claims a conditional right to intervene—28 U.S.C. § 2631(j)(1)—requires that a putative intervenor demonstrate constitutional standing. Prudential standing principles necessarily apply as well, because Congress has not expressly negated their application. *See Bennett v. Spear*, 520 U.S. 154, 163 (1997) ("Congress legislates against the background of our prudential standing doctrine, which applies unless it is expressly negated."). Second, the statute—by requiring that a putative intervenor obtain "leave of court" to intervene, 28 U.S.C. § 2631(j)(1)— necessarily invests us with discretion to consider prudential standing. *See FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995) ("Determining whether to give leave of court requires an exercise of discretion by the trial court.").

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 41

Baker, J., concurring

a particular claim." *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 965

(Fed. Cir. 2017) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91,

100 (1979)).[35]

Here, the Coalition seeks to intervene to defend Proclamation 9980,

which is a sovereign legal interest of the government, not the Coalition's mem-

bers. *Cf. Diamond v. Charles*, 476 U.S. 54, 65 (1986) (physician that intervened

to defend state abortion law had no cognizable interest for standing purposes

"because the power to create and enforce a legal code, both civil and criminal[,]

is one of the quintessential functions of a State") (cleaned up).[36] Thus, to have

prudential standing to defend Proclamation 9980, the Coalition's members

---

[35] Although the Supreme Court's decision in *Lexmark Int'l v. Static Control Compo-nents, Inc.*, 572 U.S. 118 (2014), upended several decades of standing law by recasting the "zone of interests" inquiry as non-prudential, *see id.* at 127–28, *Lexmark* expressly declined to reconsider third-party standing. *See id.* at 127 n.3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."). The Federal Circuit's de-cisions applying third-party standing principles therefore remain fully binding on us.

[36] Of course, Congress "has the power to create new interests, the invasion of which may confer standing." *Diamond*, 476 U.S. at 66 n.17 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41, n.22 (1976)). Two examples familiar to regular readers of our Court's opinions are the countervailing duty and antidumping statutes, which allow interested parties to petition Commerce to initiate administrative proceedings to impose such duties. *See* 19 U.S.C. § 1671a(b)(1); 19 U.S.C. § 1673a(b)(1). Such par-ties can later intervene in this Court as a matter of right to defend any such duties that Commerce imposed, *see* 28 U.S.C. § 2631(j)(1)(B), and have prudential standing to do so because the statutory scheme vests them with a legally cognizable interest in defending such duties.

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 42

Baker, J., concurring

must demonstrate a " 'close' relationship with the person who possesses the right," i.e., the government, and a " 'hindrance' to [the government's] ability to protect [its] own interests." *Id.* at 966 (quoting *Kowalski*, 543 U.S. at 130).

The Coalition's members do not satisfy this test. First, they have no relationship with the government. *Cf. Kowalski*, 543 U.S. at 130–31 (noting that in some cases the attorney-client relationship can confer third-party standing on the part of an attorney to assert the interests of a client). Nor does any impediment prevent the government from fully defending Proclamation 9980.

In short, even though the Coalition's members possess constitutional standing because of their competitive injury that will likely result from Proclamation 9980's invalidation, they lack third-party standing because they have no "legally protected interest" in defending Proclamation 9980. As its members lack prudential standing, the Coalition founders on the rock of the first *Hunt* associational standing element.

### b.   Germaneness

To establish associational standing, the Coalition must also demonstrate the second *Hunt* element, i.e., that "the interests it seeks to protect are germane to the organization's purpose." *Disabled Am. Veterans*, 234 F.3d at 689. Neither the Coalition's intervention motions nor its proposed answers

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 43

Baker, J., concurring

accompanying them contained any allegations regarding the nature of the Co-

alition and its purposes, much less whether the interests it seeks to protect are

germane to those purposes. We therefore ordered the Coalition to address, *inter*

*alia*, its associational standing, and to submit any supporting evidence.

As noted above, the Coalition's response included no declaration or affi-

davit from any person purporting to speak on behalf of the *Coalition*. As a re-

sult, we have no evidence in this record addressing whether the Coalition's

members' interests in Proclamation 9980 "are germane to the organization's

purpose." *Id*. at 689. Indeed, as discussed above at length, the Coalition sub-

mitted no evidence of any kind regarding the "organization" that the Coalition

purports to be, much less its purposes.

The Coalition therefore fails to carry its burden of demonstrating that it

satisfies the germaneness requirement of associational standing. *See McKin-*

*ney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1553 (Fed. Cir. 1986) (public in-

terest law firm did not have associational standing because it "failed to demon-

strate a nexus between its organizational purpose and the economic interests

of the producers and workers it purportedly represents"); *NHH Inv'r Grp. v.*

*DFH Watford, LLC*, No. 4:15-CV-027, 2015 WL 12867309, at *3 (D.N.D. Oct. 8,

2015) (associational standing did not exist because "[a]n exhaustive review of

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                                    Page 44

Baker, J., concurring

the record leaves the Court with no understanding as to the interest or purpose

of [purported association] *as an organization*") (emphasis added); *see also Hu-*

*mane Soc'y of U.S. v. Hodel*, 840 F.2d 45, 57 (D.C. Cir. 1988) (germaneness

requirement of associational standing screens out lawsuits "filed by organiza-

tions on issues on which they as a practical matter lack expertise or re-

sources").

Because the Coalition here has provided no evidence of its interests, pur-

poses, resources, or expertise as an organization, the Coalition's attempt to in-

tervene is functionally equivalent to "a law firm seeking to sue *in its own name*

on behalf of a client . . . alleging injury from governmental action wholly unre-

lated to the firm," *Hodel*, 840 F.2d at 57–58 (emphasis added), except here the

proposed defendant-intervenor's counsel has created a name (the "Coalition")

to sue under rather than using the law firm name. That is a distinction without

a difference, and the Coalition fails to satisfy the germaneness requirement of

associational standing under *Hunt*.

* * *

In sum, I conclude that the Coalition is ineligible for permissive inter-

vention under the first prong of Rule 24(b)(1) because it lacks associational

standing as required by 28 U.S.C. § 2631(j)(1). The Coalition lacks

Baker, J., concurring

associational standing because (1) its members lack third-party standing to defend Proclamation 9980 and (2) the Coalition has failed to put forth any evidence establishing that this litigation is germane to the purposes of the Coalition as an organization. Because the Coalition lacks associational standing, it does not have a conditional right to intervene pursuant to 28 U.S.C. § 2631(j)(1).

## B. Permissive intervention based on a shared defense

The second prong of Rule 24(b)(1) allows permissive intervention if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." USCIT R. 24(b)(1)(B). Without explanation, the Coalition asserts that it has a " 'defense that shares with the main action a common question of law or fact,' USCIT R. 24(b)(1), specifically defenses regarding the lawfulness of the Proclamation and the duties on derivative articles." ECF 47, at 7. That the Coalition simply makes this assertion in passing without further development is reason alone to reject it out of hand.

In my view, the Coalition has no "defense that shares . . . a common question of law or fact," USCIT R. 24(b)(1)(B), with the government's defense. The words "claims or defenses" in Federal Rule of Civil Procedure 24(b)(1)(B) "manifestly refer to the kinds of claims or defenses that can be raised in courts

Baker, J., concurring

of law as part of an actual or impending law suit." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (quoting *Diamond v. Charles*, 476 U.S. 54, 76–77 (1986) (O'Connor, J., concurring in part and concurring in judgment)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a pleading "that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); USCIT R. 8(a)(2) (same); Fed. R. Civ. P. 8(b)(1)(A) (requiring a party "responding to a pleading" to "state . . . its defenses *to each claim asserted against it*") (emphasis added); USCIT R. 8(c)(1)(B) (same).

In *Diamond*, the district court allowed a physician to intervene to defend a challenged state abortion law. After the district court declared the law unconstitutional and the Seventh Circuit affirmed, the physician—but not the state—appealed. The Supreme Court dismissed the appeal, reasoning that the physician had no constitutional standing to defend the challenged statute because he had no direct stake in upholding the statute. *See* 476 U.S. at 68. Justice O'Connor concurred in the judgment on the basis that the district court should never have allowed the physician's intervention in the first instance. *See id.* at 71.

With respect to permissive intervention, Justice O'Connor explained that Rule 24(b)(1)(B) "plainly *does* require an interest sufficient to support a

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                    Page 47

Baker, J., concurring

legal claim or defense which is founded upon that interest and which satisfies the Rule's commonality requirement." *Id.* at 77 (cleaned up). The physician had no such interest "because he assert[ed] no actual, present interest that would permit him to sue or be sued by appellees, or the State of Illinois, or anyone else, in an action sharing common questions of law or fact with those at issue in this litigation." *Id.*

A district court in Texas recently adopted Justice O'Connor's reasoning in *Diamond* and held that the State of Nevada could not intervene in a suit against the federal government asserting a challenge to certain aspects of the Affordable Care Act. The court explained that Nevada did not qualify for permissive intervention under Rule 24(b)(1)(B) because the plaintiffs had no claim for relief against Nevada. *See DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019) ("[A]n outsider cannot use Rule 24(b) to become a party to a case simply because the outsider has a practical stake in the outcome. Instead, the outsider needs to be a proper party to a claim for relief.") (quoting Nelson, 106 Va. L. Rev. at 274–75).

In the absence of any controlling authority from the Federal Circuit, I agree with and would adopt the reasoning of Justice O'Connor in *Diamond* and the Texas district court in *DeOtte*. Here, at least for purposes of Rule

Baker, J., concurring

24(b)(1)(B), the Coalition is not a proper party in any sense in this litigation.
Just as the *Diamond* plaintiffs challenging a state abortion law had no cognizable claim against the intervening physician, and just as the *DeOtte* plaintiffs had no cognizable claim against Nevada, the plaintiffs here challenging Proclamation 9980 have no cognizable "claim" against the Coalition within the meaning of the Federal Rules of Civil Procedure and our rules. Because the plaintiffs seek no relief against the Coalition, in this suit or any other,[37] the Coalition has no "defense" within the meaning of our Rules 8(c)(1)(B) and 24(b)(1)(B). The Coalition is therefore ineligible for permissive intervention under the second prong of Rule 24(b)(1). *See* USCIT R. 24(b)(1)(B).

## C.   Prejudice to the original parties

Even if the Coalition were otherwise *eligible* for permissive intervention under either prong of Rule 24(b)(1), the rule also requires us to consider "whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT R. 24(b)(1)(3); *see also* 28 U.S.C.

---

[37] Professor Nelson observes that Federal Rule of Civil Procedure 24(b)(1)(B)—and by extension our own Rule 24(b)(1)(B)—"is a mechanism for consolidating in a single action claims or defenses that might otherwise be litigated separately." Nelson, 106 Va. L. Rev. at 386. Thus, "intervention offers a streamlined mechanism for an outside party to join pending litigation rather than filing a separate lawsuit and seeking consolidation." *Id*. at 386 n.572; *cf*. Fed. R. Civ. P. 42(a)(2); USCIT R. 42(a)(2).

Baker, J., concurring

§ 2631(j)(2) (same for statutory provision allowing intervention with "leave of court").

This discretion should not be exercised lightly, as a new party has "substantial power to direct the flow of litigation and affect settlement negotiation[s]." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring); *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996) (Posner, J.) ("Increasing the number of parties to a suit can make the suit unwieldy.").

Here, in exercising our discretion under Rule 24(b)(1)(3) and § 2631(j)(2), I agree with my colleagues that allowing intervention and thereby granting the Coalition full party status would prejudice the plaintiffs through delay and by requiring additional briefing. *Ante* at 12–13.

As to delay, I note that allowing the Coalition to intervene would have disrupted the briefing schedules agreed to by the parties in two[38] of the four cases before us in active litigation. This problem is of the Coalition's own making; in moving to intervene, it did not address its associational standing to represent its members, even though, as I explain above, the statute it invoked for

---

[38] *See* ECF 42 and 57; *Oman Fasteners LLC v. United States*, Consol. Ct. No. 20-37, ECF 46 and 52.

Baker, J., concurring

permissive intervention—28 U.S.C. § 2631(j)(1)—required it to do so. As a re-

sult, we ordered the Coalition to file supplemental papers demonstrating its

associational standing and gave the plaintiffs an opportunity to respond.[39] By

the time this supplemental briefing was completed, substantive merits briefing

was well underway in two of these non-stayed cases. It would have been prej-

udicial to the parties to establish new briefing schedules to allow the Coali-

tion's participation as a party, with the right to oppose Plaintiffs' dispositive

motions as well as file its own such motions (insofar as it has not already pre-

sumed to do so) and replies.[40]

Finally, I note that the Coalition claims, at most, an indirect economic

interest in the outcome of this litigation. The Coalition's members, however,

are not the only outsiders with such an interest. I am not prepared to turn on

---

[39] *See* ECF 62.

[40] In the two other non-stayed cases, *J. Conrad LTD v. United States*, Ct. No. 20-52, and *Metropolitan Staple Corp. v. United States*, Ct. No. 20-53, intervention would not have disrupted the merits briefing schedule, which was delayed because plaintiffs sought preliminary injunctions. Nevertheless, because the substantive issues in those cases overlap with the issues in *PrimeSource Building Products, Inc. v. United States*, Ct. No. 20-32, and *Oman Fasteners, LLC v. United States*, Consol. Ct. No. 20-37, the two cases where merits briefing was well underway by the time the supplemental intervention briefing was completed, allowing intervention in *J. Conrad* and *Metropolitan Staple* would still have prejudiced the *PrimeSource* and *Oman Fasteners* plaintiffs by allowing the Coalition to make arguments applicable to all four cases. Fairness to the *PrimeSource* and *Oman Fasteners* plaintiffs would have required re-opening or extending the briefing schedule in those cases.

Baker, J., concurring

that tap, "for the effects of a judgment in or a settlement of a lawsuit can ramify throughout the economy, inflicting hurt difficult to prove on countless strangers to the litigation." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (Posner, J.). There is a long line of potential intervenors for every case in this Court if a mere indirect economic interest is enough to justify permissive intervention.

## VI.   The *amicus curiae* alternative to intervention

Because of our national jurisdiction, our rules expressly provide for *amicus curiae* participation with leave of court. *See* USCIT R. 76. Such participation is several orders of magnitude less burdensome on the court and the parties than outright intervention. It's also far less expensive for would-be intervenors.

Outsiders with anything less than an indisputable right of intervention should think hard about whether they can accomplish their purposes more efficiently—for all involved—by seeking leave to participate as *amici curiae* rather than by taking the comparatively drastic step of seeking intervention. "[E]xperienced litigators note that many of those benefits [of intervention] could be achieved simply by . . . outsiders . . . present[ing] their views as *amici*." Nelson, 106 Va. L. Rev. at 391. In my view, we should freely give leave to

Ct. No. 20-00032; Consol. Ct. No. 20-00037; Ct. Nos. 20-00046,
20-00047, 20-00048, 20-00049, 20-00052, 20-00053, 20-00056,
20-00066, 20-00098, and 20-00118                          Page 52

Baker, J., concurring

outsiders with indirect economic interests to present their views through *amici*

*curiae* briefs.

/s/ *M. Miller Baker*
M. Miller Baker, Judge